## SHOUP et v LUCAS

Ohio Appeals, 2nd Dist, Greene Co

No 419.    Decided Nov 29, 1935

Marcus Shoup, Xenia, for plaintiff administrator; Marshall & Marshall, Xenia, for Ray Lucas, Charles Lucas and John A. Lucas.

Harry D. Smith, Xenia, and Neal W. Hunter, Jamestown, for defendant in error.

## OPINION

### By THE COURT

The cause was submitted by the court to the jury upon the law as long since established in the cases of Hinkle et, Exrs. v Sage, 67 Oh St 256, and Merrick v Ditzler, 91 Oh St 256. So that, although there is some claim that the second amended petition does not state a cause of action, we do not believe it substantial, and there are presented two questions for determination:

(1) Did the defendant in error produce any evidence which entitled her to have her cause presented to the jury, and

(2) If she did, was it of sufficient weight to support the verdict and judgment?

It was incumbent upon the defendant in error to establish by clear and convincing proof that there was an express contract, whereby the defendant in error proposed that she perform the services for compensation and her mother agreed to accept the services and to pay for them.

An examination of the record and a careful reading thereof discloses that there was sharp conflict touching the question whether or not services of the nature and to the extent claimed by defendant in error were performed.

Susan Lucas died at the age of about eighty-two years. The defendant in error claimed and offered evidence tending to prove that for many years her mother was affected with a running sore on her ankle, which required attention from one to six times a day and at times at night; that although the services sued for only covered a period of little more than five years the defendant in error had performed like services for her mother for fifteen years; that the last five or six years she had been infirm, besides the special services demanded because of the running sore, she required the attention incident to her infirmity; that during the last two years of Susan Lucas' life she was practically an invalid; that she had to be helped from the living room to the kitchen, where she could sit down and wash dishes; that she had to be moved about from one room to another and that she was unable to do anything of consequence but to knit.

Proof of the nature and extent of the services rendered, upon this record definitely preponderates in favor of the claim of defendant in error upon the testimony of disinterested witnesses. Of nine witnesses offered in behalf of defendant in error

eight were others than members of the family or relatives of the Lucases.' Of the seven witnesses on behalf of plaintiffs in error touching the nature and extent of the services, all but one were the children or husbands or wives of children of Susan Lucas.

Although the amount of the verdict is not questioned, and therefore the testimony respecting the value of the services is not in controversy, it has some bearing upon the weight of the testimony going to the establishment of the contract, inasmuch as all of the witnesses for defendant in error who testified to subject matter of value on the issue respecting the contract also testified as to the nature of the services. Since their evidence upon this subject seems to be worthy of belief it lends support to the quality of their testimony on the other issue, namely, whether or not there was an express contract.

In cases where the plaintiff sues for the recovery of services performed in the lifetime of one since deceased, obviously the establishment of an express contract is much more difficult because of the incapacity of the one suing to testify. So the cases, while properly requiring proof of an express contract where the family relationship of the plaintiff appears, holds that such contract may be proved by direct or indirect testimony.

The circumstances in the instant case established the necessity for such service as was rendered to Susan Lucas by the defendant in error. If the defendant in error had not attended her mother, then someone else must necessarily have been employed. The testimony relating to the question whether or not there was an express contract must be considered in the light of all the facts appearing in the record.

The evidence directed to the proof of the contract is found in the statements of four witnesses: W. W. Lucas, a son of Susan Lucas, sixty-four years of age, who had for many years lived with his mother and sister, the defendant in error; Opal Jasper, a friend of the Lucas family, but unrelated, who lived about one-half mile from the home of Susan Lucas, and who was a frequent visitor at her home; Thelma Clark, not related to the Lucases, who, prior to March 24, 1934, lived in Bowersville, a near neighbor to Susan Lucas, who visited in the Lucas home four times a week; Rebecca Bowermaster, unrelated, a neighbor and friend of Susan Lucas.

W. W. Lucas, at page 17 of the record, testified as follows:

"Q. I now ask you to tell the jury what you heard your mother say to Laura about paying her for her services.

"A. Well, I remember one occasion very distinct, because I never will forget it. I just stepped into the room, and Laura said —'I have got to have some pay for this.' That's what Laura was telling her, you know, and they was both pretty well fagged out; and both a little bit out of humor. So she said—'Well, you shall have more than the rest.' That's what she said.

"Q. That's what your mother said?

"A. That's what my mother said, and at other times, oh, I have heard them talk about it, and she asked her—'Well, I got to have some pay for this,' and she would say—'Well, yes,' and answers like that, you know. Oh, I heard it so much. I never said anything about it to anybody."

And at pages 23 and 24 the same witness:

"Q. You said you heard your mother talk of Laura being compensated a number of different times. Did that occur more than once during the last six years your mother was alive?

"A. Oh, yes, that's when it was talked about most, you know. There wasn't anything said about compensation until several years back, you know. She mentioned it every now and then, you know.

"Q. It wasn't mentioned up until several years back, and the last five or six years it was talked about frequently?

"A. Yes. I never said anything about it to anyone."

Opal Jasper at page 73:

'Q. Now, I will ask you whether at the time that you were at the Lucas home about two weeks before Mrs. Susan Lucas died you heard Mrs. Susan Lucas make any statements with regard to paying Laura for services?

"A. Yes, sir.

"Q. What did you hear her say?

"A. She said—'Laura, some day you will be well paid for this.'

"Q. At the time that she made that statement, was her daughter Laura doing something for her?

"A. Yes, sir.

"Q. What was she doing?

"A. Dressing the limb."

Thelma Clark, at pages 77 and 78 of the record:

"Q. At any time during the two years you were in Bowersville, did you ever hear Mrs. Susan Lucas make any statements with regard to whether or not she would

pay Laura for any services Laura had rendered to her?

"A. Yes.

"Q. State just when, at what time, and what she said.

"A. One afternoon I called at the Lucas home. While I was there Mrs. Jasper came in to have Laura cut her a dress out. She didn't want her to make it. She wanted it cut out. Laura was dressing her limb at the time she came in, and she had to wait until she got her limb dressed before she could cut the dress out for her. Laura, she told Mrs. Jasper what a care her mother was, and her mother, looking up from her chair, said—'Laura, some day you will be repaid for your services here'."

And Rebecca Bowermaster, at page 89 of the record:

"Q. During the time that you knew Mrs. Susan Lucas, did you ever on any occasion hear her make any statements regarding the fact that she would or would not pay Laura for her services?

"A. No, I never just heard her say she would or wouldn't pay her. I heard her say Laura never could be paid for what she had done, and Laura deserved to be well paid for what she had done."

It is our opinion that the testimony of W. W. Lucas and Thelma Clark, corroborated in some particulars by testimony of the other witnesses quoted, meets all the requirements incident to the proof of an express contract as defined in Hinkle v Sage, supra. There is a proposal on the one hand to perform services for pay with the expectancy of receiving pay, and there is the promise or agreement on the other hand to accept the proposition and to pay for the services.

We are cited by counsel for plaintiffs in error to Arns, Exr. v Disser, 40 Oh Ap 163, and particularly page 165. A number of witnesses in the Arns case testified to statements made by Catherine Arns, for whom the services were claimed to have been performed, and it is asserted that they are parallel to the language employed by Susan Lucas in the instant case. The distinction to be found in the answers is that at no time does it appear in the Arns case that Disser, who was claiming a payment, was present at any time when the statements imputed to Mrs. Arns were made. Then, too, as the court held, the statements in the Arns case were but expressions of gratitude disclosing an intention to do something for Disser, which intention was carried out by a deed by Mrs. Arns to Disser for certain property.

The jury was properly charged that to render a verdict for the defendant in error the evidence must support her claim by clear and convincing proof. In addition to the general verdict, which implied that the evidence was clear and convincing, all twelve members thereof answered affirmatively a special interrogatory submitted by counsel for plaintiffs in error as follows:

"Do you find that there was an express contract between the plaintiff and the decedent, wherein the decedent agreed to pay plaintiff for services rendered?"

The elements of an express contract appeared in the record and the weight of the testimony and the credibility of the witnesses were questions for the jury, and as they have been resolved in favor of the claim of defendant in error, we cannot say that the verdict and judgment were not sustained by the proper degree of proof.

The judgment will be affirmed.

BARNES, PJ, HORNBECK and BODEY, JJ, concur.